

**PHIL WEISER**
Attorney General

**NATALIE HANLON LEH**
Chief Deputy Attorney General

**SHANNON STEVENSON**
Solicitor General

**TANJA WHEELER**
Chief Operating Officer

STATE OF COLORADO
DEPARTMENT OF LAW

**RALPH L. CARR**
**COLORADO JUDICIAL CENTER**
1300 Broadway, 10th Floor
Denver, Colorado 80203
Phone (720) 508-6000

Office of the Attorney General

September 11, 2025

The Honorable R. Brooke Jackson
Byron G. Rogers United States Courthouse, C252
1961 Stout Street
Denver, Colorado 80294

RE:     *McComas et al. v. Polis, et al.,* 1:25-cv-01618-RBJ

Your Honor:

Pursuant to your Practice Standards, the Colorado Governor, Attorney General, executive director of the Department of Public Health & Environment, and Medical Board (collectively, "State Defendants") submit this letter outlining the grounds for dismissal they intend to raise in their Motions to Dismiss. Plaintiffs challenge the residency requirement within Colorado's End-of-life Options Act (the "Act"), under the Privileges and Immunities, dormant Commerce, and Equal Protection Clauses of the U.S. Constitution.

Plaintiffs fail to allege a plausible claim under any Clause, and the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) with prejudice. Additionally, the Eleventh Amendment compels dismissal under Fed. R. Civ. P. 12(b)(1) of Attorney General Weiser.

*I.    All Defendants should be dismissed because medical aid-in-dying ("MAID") is not a fundamental right.*

MAID is not a fundamental right. *Washington v. Glucksberg*, 521 U.S. 702, 729 (1997). As the Supreme Court has observed, "[t]hroughout the Nation, Americans are engaged in an earnest and profound debate about the morality, legality, and practicality of physician-assisted suicide . . . , as it should in a democratic society." *Id.* at 735. In 2016, Coloradans passed ballot initiative Proposition 106, the Act, §§ 25-48-101 to 123, C.R.S. (2025). The Act created a pathway for qualified, terminally ill Coloradans to access MAID, allowing recipients to die on their own terms. Relevant here, among other requirements, the Act requires medical providers to confirm a patient's Colorado residency prior to prescribing MAID. §§ 25-48-102(14), -106(1).

*A.   MAID is not a fundamental privilege or immunity.*

The Privileges and Immunities Clause states that "Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2. But the Clause protects only those privileges and immunities that are "fundamental" and "bear[] upon the vitality of the Nation as a single entity." *Baldwin v. Fish & Game Comm'n*, 436 U.S. 371, 383, 388 (1978). Because MAID is neither, Plaintiffs' claims should be dismissed.

Page 2

When examining claims that a residency classification offends Privileges and Immunities protections, courts first consider whether a statute-restricted activity is sufficiently basic to the Nation's livelihood to fall within the Clause's purview. *Sup. Ct. of Virginia v. Friedman*, 487 U.S. 59, 64 (1988). Even once the Clause's protections are triggered, a court will invalidate the statute only if "the restriction is not closely related to the advancement of a substantial state interest." *Id.* at 65. MAID does not meet this test.

MAID access is insufficiently basic to this Nation's livelihood. In *Glucksberg*, the Court observed that "[f]or over 700 years, the Anglo-American common-law tradition has punished or otherwise disapproved of both suicide and assisting suicide." *Glucksberg*, 521 U.S. at 711. Even today, MAID is not universally recognized, though "[t]hroughout the Nation, Americans are engaged in an earnest and profound debate about the morality, legality, and practicality of physician-assisted suicide . . . as it should in a democratic society." *Id*. at 735.

Supreme Court and Tenth Circuit precedent compels the conclusion that MAID access is not protected under the Privileges and Immunities clause. *See, e.g.*, *McBurney v. Young*, 569 U.S. 221, 227 (2013) (ruling that the Clause did not protect access to public information via FOIA law); *Peterson v. Martinez*, 707 F.3d 1197, 1215 (10th. Cir. 2013) (holding that carrying a concealed weapon is not protected under the Clause); *cf. Nelson v. Geringer*, 295 F.3d 1082, 1090 (10th Cir. 2002) (holding that ability to serve in National Guard was basic to Nation's livelihood and thus protected). MAID laws, like FOIA laws examined in *McBurney*, did not exist at the time of the Nation's founding. And, like the laws restricting the carrying of concealed weapons at issue in *Peterson*, Anglo-American common law has traditionally restricted or criminally punished individuals who assist suicide. Even assuming the value of providing MAID access in Colorado, Plaintiffs cannot put forward evidence that MAID is basic to the Nation's livelihood like the Guard was said to be in *Geringer*. Nor is it essential to the recognized right to travel, which is not restricted by the requirement that MAID be limited to Colorado residents. *See Govatos v. Murphy*, No. 23-cv-12601, 2024 WL 4224629, at *13–16 (D.N.J. Sept. 18, 2024), *appeal docketed*, 24-2947 (3rd Cir. Oct. 17, 2024) (concluding that New Jersey's Medical Aid in Dying for the Terminally Ill Act did not violate the right to travel, and dismissing other claims).

Furthermore, in requiring medical providers to confirm a prospective MAID recipient's Colorado residency, the Act protects Colorado providers from criminal liability in other states and provides additional protections to Coloradans receiving MAID that would not be enforceable elsewhere. Accordingly, and without conceding that the Clause protects MAID, the residency requirement closely relates to a substantial government interest and would pass constitutional muster. Because Plaintiffs do not and cannot contend otherwise, their claim under the Privileges and Immunities Clause should be dismissed.

B.  MAID neither implicates nor burdens interstate commerce.

To prevail under the dormant Commerce Clause, Plaintiffs must demonstrate the Act is "designed to benefit in-state economic interests by burdening out-of-state competitors." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 370 (2023). But Plaintiffs fail to plausibly allege such protectionism by Colorado.

Page 3

Plaintiffs do not allege the Act "seeks to advantage in-state firms or disadvantage out-of-state rivals." *Id.* at 370. Nor do they allege that a truly interstate market for MAID exists. In *McBurney, supra*, the Supreme Court held that Virginia's FOIA law neither burdened nor regulated interstate commerce, but instead "merely provide[d] a service to local citizens that would not otherwise be available at all." *McBurney*, 569 U.S. at 235. The Act's provision of MAID to qualified Coloradans is no different. Colorado has legitimate interests in protecting its medical providers from criminal and civil liability in other states, and its qualified residents' ability to access a divisive, specific, end-of-life medical procedure on their own terms. Without such classifications, medical providers could—and, according to Plaintiffs—would provide MAID to non-Colorado-residents, undermining the protections the residency requirement provides. These benefits outweigh any incidental burden on interstate commerce. This Court should dismiss Plaintiffs' claim under the dormant Commerce Clause.

C.  *The Act is entitled to and satisfies rational basis review.*

The Act classifies on residency grounds, which is not suspect. *Martinez v. Bynum*, 461 U.S. 321, 329 (1983). "[I]f a law neither burdens a fundamental right nor targets a suspect class, [the Court] will uphold the legislative classification so long as it bears a rational relation to some legitimate end.'" *Romer v. Evans*, 517 U.S. 620, 631 (1996). MAID is not a fundamental right, *Glucksberg*, 521 U.S at 729, nor is residency a suspect classification, *Bynum*, 461 U.S. at 328 n.7. Because the Act neither burdens a fundamental right nor employs a suspect classification, and the residency requirement bears a rational relationship to the benefits discussed *supra*, this Court should dismiss Plaintiffs' Equal Protection claim.

II.   *The Attorney General is entitled to dismissal because of Eleventh Amendment immunity.*

The Eleventh Amendment bars suits against state officers sued in their official capacity, as the Attorney General is here. *Free Speech Coal., Inc. v. Anderson*, 119 F.4th 732, 736 (10th Cir. 2024). The Attorney General is not a "person" under 42 U.S.C. § 1983. *See Ross v. Bd. of Regents of Univ. of N.M.*, 599 F.3d 1114, 1117 (10th Cir. 2010). The fiction of *Ex parte Young* also does not apply to the Attorney General, who has no enforcement role under the Act. *See Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021); *Sgaggio v. Weiser*, No. 22-cv-01791-PAB, 2022 WL 3700723, at *3-4 (D. Colo. Aug. 26, 2022).

Sincerely,

FOR THE ATTORNEY GENERAL

| /s/ *Zach Fitzgerald* | /s/ *Lily Nierenberg* | /s/ *Jason Marquez* |
|---|---|---|
| Zach Fitzgerald, AAG* | Lily Nierenberg, Sr. AAG* | Jason Marquez, AAG* |
| Brian A. Keener, AAG* | *Attorney for Jared Polis* | Joshua Woolf, AAG* |
| *Attorneys for Colo. Med. Board Members* | *and Philip Weiser* | *Attorneys for Jill Hunsaker Ryan* |

*\*Counsel of Record*