September 18, 2025

The Honorable R. Brooke Jackson
Byron G. Rogers United States Courthouse, C252
1961 Stout Street
Denver, Colorado 80204

**Re:** *McComas et al. v. Polis, et al.*, 1:25-cv-01618-RBJ

Dear Judge Jackson:

Plaintiffs Dr. Barbara Morris, M.D., and Dr. Jennifer Harbert, M.D., submit this letter as a joint response to the letters filed by Defendant Alexis King, ECF 58, and the State Defendants, ECF 64 (together, the "Defendants").[1] If filed, Defendants' motions to dismiss should be denied because Plaintiffs have plausibly alleged that the Colorado End-of-Life Options Act's (the "Act") residency requirement—which prohibits the provision of medical aid in dying ("MAID") to non-residents of Colorado—violates the U.S. Constitution's Privileges and Immunities Clause, Dormant Commerce Clause, and Equal Protection Clause. Because the Amended Complaint states plausible claims for relief, dismissal is not appropriate.

**The Act violates the Privileges and Immunities Clause.** The Privileges and Immunities Clause protects privileges and immunities that are "fundamental." *See McBurney v. Young*, 569 U.S. 221, 226 (2013). Among the fundamental rights protected by the Clause is the right to interstate travel, which requires that a nonresident be treated as "a welcome visitor" entitled to the same privileges as a state's residents. *Saenz v. Roe*, 526 U.S. 489, 500-01 (1999). The Supreme Court has held that the fundamental right to interstate travel includes the right to travel for medical care. *Saenz*, 529 U.S. at 500; *Doe v. Bolton*, 410 U.S. 179, 200 (1973), *abrogated on unrelated grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022).

The Act's residency requirement denies that fundamental right. As described in the FAC, the Act's residency requirement "denie[s]" MAID "to non-resident patients" by unconstitutionally limiting qualified individuals to those who reside in Colorado. FAC ¶¶ 3-4. As a result, the Act "forces [both Drs. Morris and Harbert] to decline to treat prospective non-Colorado residents who seek [MAID]." FAC ¶ 48.

State Defendants contend that interstate travel for medical care, including MAID, is not a fundamental right protected by the Privileges and Immunities Clause. But they cite case law involving inapposite residency requirements for rights under a state Freedom of Information Act, recreational elk hunting, and carrying a concealed weapon. ECF 64 at 2. State Defendants also

---

[1] Plaintiff Jeff McComas, a Minnesota resident who sought access to MAID in Colorado, passed away during the pendency of this action. ECF 65. Drs. Morris and Harbert bring this case on their own behalf and on behalf of non-residents who wish to have the option of MAID or who may be denied MAID in the future. FAC ¶¶ 9-10.

contend that *access to MAID* is not a fundamental right, but at issue in this case is the well-recognized fundamental right to interstate travel. Furthermore, in contending that access to MAID is not a fundamental right, State Defendants overlook the difference between rights granted under the Due Process Clause and rights granted under the Privileges and Immunities Clause. *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 758 (2010).

Because the Act's residency requirement discriminates against nonresidents' exercise of a fundamental right, Defendants must show a substantial reason for the difference in treatment. *Supreme Ct. of N.H. v. Piper*, 470 U.S. 274 (1985). Defendants contend that the residency requirement addresses the risk of criminal and civil liability in other states for Colorado physicians who provide MAID and for Coloradans who receive such care. But whether such risks exist, how substantial they are, and whether they in fact motivated the Act's residency requirement are all questions of fact that cannot be resolved on the pleadings. Indeed, Plaintiffs do not allege that their non-resident patients would administer MAID medication out-of-state, nor does the Act prohibit Colorado residents from administering MAID medication out-of-state. The risks cited by State Defendants are thus unfounded at this stage of litigation.

**The Act violates the Dormant Commerce Clause.** "[T]he Commerce Clause prevent[s] States from discriminating against the citizens and products of other States." *Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504, 522 (2019) (internal quotation marks omitted). That is precisely what the Act does: It "discriminates against interstate commerce on its face" by restricting the ability of out-of-state residents to receive or be offered Colorado medical care. SAC ¶ 77; *see also Tennessee Wine*, 588 U.S. at 510, 518 (striking down residency requirement for retail license applicants that "blatantly favor[ed] the State's residents"). Because the Act's "residency requirement plainly favors [Coloradans] over nonresidents," *id.* at 518, it is unconstitutional absent "a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *Direct Mktg. Ass'n v. Brohl*, 814 F.3d 1129, 1136 (10th Cir. 2016) (quotation omitted). Defendants cannot make such a showing; rather, their proffered justifications are wholly speculative.

Defendants assert that the Dormant Commerce Clause is not implicated because there is no interstate market for MAID. But Plaintiffs plainly allege that the residency requirement facially discriminates against "interstate commerce *in the form of medical care*," including by "restricting access to the purchase of medical care" and "prevent[ing] patients who reside in other states from procuring services in Colorado." FAC ¶¶ 75-76 (emphasis added). Plaintiffs also plead that the Act "substantially burdens interstate commerce by discouraging non-residents from traveling to Colorado" to participate in the medical marketplace. FAC ¶ 78. Thus, Plaintiffs' claims do not turn on the existence of a dedicated national market for MAID. Regardless, whether such a dedicated market exists (to the extent such a showing is required) is a disputed factual question that cannot be resolved at this stage.

**The Act violates the Equal Protection Clause.** Defendants argue for dismissal because the residency requirement is entitled to, and satisfies, rational basis review. That is doubly wrong. For starters, the residency requirement burdens a fundamental right: the right to interstate

travel. The Act's restriction of that fundamental right is subject to strict scrutiny. *Maehr v. United States Dep't of State*, 5 F.4th 1100, 1118 (10th Cir. 2021). Whether the Act's discriminatory residency requirement is "narrowly tailored to serve a compelling state interest," *id*. at 1110, or "rationally related to legitimate government interests," *id*., turns on disputed facts not amenable to resolution on a motion to dismiss. While Defendants assert that the residency requirement protects Colorado providers from out-of-state liability, Plaintiffs will show that the residency requirement is arbitrary and unrelated to this (and other) justifications.

**Eleventh Amendment immunity does not apply.** Defendants Attorney General Weiser and D.A. King argue that the Eleventh Amendment bars the claims against them. But Eleventh Amendment immunity "does not apply to suits against a state officer in his official capacity seeking only prospective relief . . . so long as the defendant officer has 'some connection with the enforcement of the act.'" *Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 760 (10th Cir. 2010) (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)). Plaintiffs have pled a sufficient connection here. Attorney General Weiser and D.A. King enforce Colorado's criminal laws, FAC ¶¶ 12, 15, including Colorado's general prohibition on assisted suicide, C.R.S. 18-3-104(1)(b). While the Act creates an exemption to this prohibition, it "does not preclude criminal penalties for conduct that is inconsistent with the Act[]." FAC ¶ 25 (quoting C.R.S. § 25-48-119(4)); *see also* C.R.S. § 25-48-121 (only "[a]ctions taken in accordance with th[e Act]" are not assisted suicide). Absent a declaration that the Act's residency requirement is unconstitutional, Plaintiffs face possible criminal prosecution for providing MAID to non-residents. FAC ¶¶ 9, 10, 43. These allegations are sufficient to overcome Defendants' asserted Eleventh Amendment immunity.

**Plaintiffs have standing to bring this lawsuit, and their claims are ripe.** D.A. King argues that Plaintiffs have failed to allege a cognizable injury or a credible threat of prosecution, but the law is clear that, as physicians, Plaintiffs have both individual and third-party standing to bring this lawsuit. *Compassion in Dying v. Washington*, 79 F.3d 790, 795 (9th Cir. 1996) (en banc); *Singleton v. Wulff*, 428 U.S. 106, 117-18 (1976); FAC ¶¶ 46-49, 55-57. Moreover, contrary to D.A. King's contention that Plaintiffs' claims are unripe because they depend on "contingent future events," ECF 58 at 2, the Act's language permitting prosecution for actions inconsistent with the Act provide "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979); C.R.S. § 25-48-119(4) (permitting criminal prosecution for conduct inconsistent with the Act).

Sincerely,

HOGAN LOVELLS US LLP           COMPASSION AND CHOICES
Michael C. Theis                           Veronica Darling
Elizabeth A. Och                           Jess Pezley
Edwin E. (Steve) Bruns